IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUSTIN MCCLAIN,<br><br>      Plaintiff,<br><br>v.<br><br>ANTHONY WELLS, JOSHUA SCHOENBECK, CHARLES RAYFORD, OFFICER LOESING, JOHN/JANE DOE #1 SERGEANT FIRST SHIFT, JOHN/JANE DOE #2 LIEUTENANT FIRST SHIFT, JOHN/JANE DOE #3 SERGEANT SECOND SHIFT, JOHN/JANE DOE #4 LIEUTENANT SECOND SHIFT, JOHN/JANE DOE #5 SERGEANT THIRD SHIFT, JOHN/JANE DOE #6 LIEUTENANT THIRD SHIFT, JOHN/JANE DOE #7 PLACEMENT OFFICER,<br><br>      Defendants. | Case No. 24-cv-1486-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Justin McClain, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, McClain alleges that the defendants failed to protect him from inmate assaults in violation of the Eighth and Fourteenth Amendments.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

1

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

McClain makes the following allegations: On October 1, 2023, McClain suffered injuries from a physical altercation with his cellmate in Menard's East Cellhouse (Doc. 1, p. 7). After the altercation, McClain refused housing in order to get away from his cellmate and was punished with segregation (*Id.*). On October 4, 2023, McClain went before the adjustment committee for his disciplinary charge related to the altercation and refusal of housing. He informed the chair and co-chair of the committee that he did not see eye to eye with his cellmate and wanted to be moved in order to prevent any future conflicts (*Id.*).

On October 9, 2023, however, McClain was sent back to the East Cellhouse and told by the sergeant that he was going back in the cell with his previous cellmate (*Id.* at p. 8). He informed the sergeant that he had issues with his cellmate, but the sergeant told him he would have to sign into protective custody if he did not want to be housed with his previous cellmate (*Id.*). McClain was placed in West Cellhouse in protective custody.

In March 2024, McClain was again transferred to a cell with an inmate from a rival gang with a higher aggression level (*Id.* at p. 8). He and his cellmate requested a transfer to no avail (*Id.*). McClain alleges that he suffered severe physical trauma as a result of the placement (*Id.*).

2

On May 10, 2024, McClain was again placed in a cell with a rival gang member, who also had a higher aggression level than McClain (*Id.* at pp. 8-9). McClain spoke to Correctional Officer Loesing and requested a crisis team because he and his cellmate were having issues, and they did not want to fight anymore (*Id.* at p. 9). Loesing informed McClain that his concerns were not a basis for a crisis team or for a cell transfer (*Id.*). That same day, McClain spoke to a porter and requested he contact a staff member to speak to McClain about the situation (*Id.*). McClain did not hear from any staff member in the housing unit. McClain wrote requests and handed them to the porter to hand over to an officer the unit, but he still did not receive a response from staff.

McClain later heard keys jingling and yelled for the staff member to speak to him (*Id.* at p. 9). An unknown staff member stopped at his cell front and McClain explained that he was having issues wit his cellmate. He informed the staff member that he and his cellmate had a physical altercation that resulted in a broken television (*Id.*). The officer did not respond (*Id.*).

During the 3:00 p.m. count, he again asked to be moved. He specifically talked to Correctional Officer Shepard and pointed out that his television was broken due to a recent altercation with his cellmate (*Id.* at p. 10). He asked for a crisis team. But another officer told Shepard that McClain's concerns were not the proper basis for calling a crisis team and McClain did not qualify for a transfer to another cell (*Id.*). McClain then spoke to Correctional Officer Loera and again requested a transfer to another cell because he believed there was a possibility of another physical altercation with his cellmate (*Id.*). Officer Shepard approached and again stated that McClain's concerns were not enough

3

to justify a transfer or a crisis team (*Id*.). He directed McClain to write a statement of facts about the situation; McClain completed the statement and turned it in to Shepard. Later, he heard his name being called by a sergeant who asked why McClain did not want to play anymore (*Id*.). Although he made several requests to be moved, he received no response from staff (*Id*. at p. 11).

## Preliminary Dismissals

Although McClain alleges that his equal protection rights under the Fourteenth Amendment were violated, he fails to allege how his rights were violated. Nor does he allege that any of the named defendants denied him equal protection. He merely states in conclusory fashion that his equal protection rights were violated (Doc. 1, p. 7). But without more, McClain simply fails to state a claim.

McClain also identifies officers that he spoke to who are not listed in the case caption. To be considered a party, a defendant must be "specif[ied]…in the caption." *Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005). McClain alleges that he spoke to Officers Shepherd and Loera but neither are listed as defendants. Thus, any claim against these two officers is considered **DISMISSED without prejudice**.

McClain also refers to several unknown officers. He does not identify them by any description, nor does he indicate whether they are male or female. He refers to them as John/Jane Does who are employed on specific shifts sometime between May 10 – 12, 2024 (Doc. 1, pp. 4-5). He fails to indicate when he spoke to these individuals. He alleges that he requested that a porter inform staff that McClain wanted to speak to them, but he fails to indicate whether these officers spoke to him or were informed of his request. He also

identifies a John Doe Placement Officer but fails to allege whether the officer was aware of McClain's issues with his cellmates. Without more, McClain simply fails to allege that these unknown individuals were aware of his need for protection and acted with deliberate indifference to that need. *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about [Plaintiff's] condition, not whether a reasonable official should have known"). *See also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (noting that a successful Complaint generally alleges "the who, what, when, where, and how....")

McClain also identifies Warden Anthony Wells as a defendant in the case caption but merely states that he was the warden and responsible for employment of staff and oversight of the facility (Doc. 1, p. 3). But the warden cannot be held liable on the basis of *respondeat superior*, or supervisory, liability because it is not recognized under Section 1983. *See, e.g.*, *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Nor can he be liable for simply responding to McClain's grievances on the topic. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

Finally, McClain identifies adjustment committee members Joshua Schoenbeck and Charles Rayford as defendants but fails to adequately state a claim against them. He alleges that both officials were in charge of disciplining inmates and McClain informed them during his disciplinary hearing that he was having issues with rival gang members and his current cellmate (Doc. 1, pp. 3, 7). But he fails to allege that either official acted with deliberate indifference to McClain's concerns. There is no indication that either

5

officer participated in the decision to move McClain back to his former cell several days after the adjustment committee meeting. Thus, the claims against Schoenbeck and Rayford are also dismissed for failure to state a claim.

## Discussion

Based on the allegations in the Complaint, the Court designates the following count:

> **Count 1:** Eighth Amendment failure to protect claim against Correctional Officer Loesing for failing to intervene in the fight between McClain and his cellmate on May 10, 2024.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, McClain states a claim against Officer Loesing. In order to state an Eighth Amendment failure to protect claim, a plaintiff must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendants "acted with deliberate indifference to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). A plaintiff also must show that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing "that he

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). McClain alleges that he informed Loesing during the morning count and that he needed a crisis team because he and his cellmate were fighting, and he needed to be removed from the cell. But Loesing merely told McClain that his concerns did not justify calling a crisis team nor did it qualify McClain for a cell change (Doc. 1, p. 9). McClain alleges that after speaking with Loesing, he and his cellmate continued to fight. That is enough at this stage to state a claim.

## Pending Motions

McClain recently filed a motion for subpoenas (Doc. 12) requesting the issuance of subpoenas for records. Specifically, McClain seeks discovery that he believes will help identify the John Does. But no defendant has yet been served or entered an appearance in the case. Further, McClain fails to state a claim as to any unknown defendant. Thus, McClain's motion for subpoenas (Doc. 12) is **DENIED as moot**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Officer Loesing. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendant Correctional Officer Loesing: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant Loesing's place of employment as identified by McClain. If Loesing fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were

sent, the Clerk shall take appropriate steps to effect formal service on Loesing, and the Court will require him to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Loesing can no longer be found at the work address provided by McClain, the employer shall furnish the Clerk with his current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant Loesing is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against McClain, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, McClain is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 30, 2024**

*[signature]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the defendant of your lawsuit and serve him with a copy of your Complaint. After service has been achieved, the defendant will enter an appearance and file an Answer. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. After the defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**